IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MICHAEL L. HINDMAN PLAINTIFF

V. NO. 10-3092

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff filed his current applications for DIB and SSI on September 8, 2008, alleging an inability to work since February 12, 2008, due to COPD (chronic obstructive pulmonary disease). (Tr. 101-105, 126). For DIB purposes, Plaintiff maintained insured status through June 30, 2009. (Tr. 122). An administrative hearing was held on November 20, 2009, at which Plaintiff appeared with counsel and he and a friend testified. (Tr. 21-48).

By written decision dated April 9, 2010, the ALJ found that Plaintiff had the following severe impairments: COPD, emphysema, and substance dependence disorder. (Tr. 10).



AO72A
(Rev. 8/82)

However, after reviewing all of the evidence presented, she determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 11). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work, except that he must have no more than moderate exposure to airborne irritants, including but not limited to dust, fumes, gases and odors. He must also avoid exposure to extremes of temperature and humidity. (Tr. 12). With the help of a vocational expert (VE), the ALJ determined Plaintiff retained the residual functional capacity (RFC) to perform his past relevant work as a cashier and prep cook. (Tr. 16). Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 18, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 7, 8).

**II. Evidence Presented:**

Plaintiff was born in 1957 and completed high school and one or two years of college.[1] Plaintiff has past work history as a drummer in a professional band from 1978 to 1999, and thereafter as a cook, bartender, and stocker, customer service helper, and cashier at various places. (Tr. 132).

On January 28, 2007, Plaintiff was taken to the emergency room at Baxter Regional Medical Center, when he passed out because of alcohol abuse. (Tr. 258). It was reported that Plaintiff drank a fifth of hard liquor every day, and smoked one to two packs per day, which he

[1] In his undated Disability Report-Adult, Plaintiff indicated that he completed one year of college. However, at the hearing held on November 20, 2009, Plaintiff testified that he completed two years of college. (Tr. 25, 130).



AO72A
(Rev. 8/82)

had done for more than thirty years. (Tr. 258). Plaintiff was admitted to the hospital for alcohol addiction, was counseled to quit smoking and drinking alcohol, and was diagnosed with: 1) Alcohol abuse; 2) Nicotine addiction; 3) Electrolyte disturbance with hyponatremia, hypokalemia and hypomagnesemia;[2] and 4) Bronchitis. (Tr. 254). Plaintiff was placed on a nicotine patch. (Tr. 254). A single x-ray of Plaintiff's chest revealed an "old right rib formation" with a large amount of callous formation, but no pneumothorax or hemothorax was noted. (Tr. 260).

The next medical record is dated January 3, 2008, when Plaintiff visited Mountain Home Christian Clinic. At that time, Plaintiff weighed 116 pounds and his chief complaint was dyspnea[3] (heavy smoker) - tightness - ETOH abuse - joints sore and painful - arthritis. (Tr. 187). The impression was: Asthma/COPD and smoking cessation, and Plaintiff was prescribed Albuterol and Advair. (Tr. 187).

Findings from a radiology exam report dated January 9, 2008, indicated severe emphysema and diffuse interstitial changes. (Tr. 186). There was no pneumothorax or large pleural effusion, and old right-sided rib fractures were noted. There were also degenerative changes of the spine and diffuse osteopenia.[4] The impression was: prominent COPD and evidence of old rib fractures, otherwise no acute process in the chest. (Tr. 186).

---

[2]Hyponatremia - Deficiency of sodium in the blood. Dorland's Illustrated Medical Dictionary 916 (31st ed. 2997).
Hypokalemia - Abnormally low potassium concentration in the blood. ... Id. at 915.
Hypomgnesemia - An abnormally low magnesium content of the blood plasma, usually the result of malabsorption, dehydration, alcoholism, or renal disease; the chief manifestation is neuromuscular irritability. Id. at 916.

[3]Dyspnea - breathlessness or shortness of breath; difficult or labored respiration. Id. at 589.

[4]Osteopenia - Reduced bone mass due to a decrease in the rate of osteogenesis to the extent that there is insufficient compensation for normal bone lysis. The term is also used to refer to any decrease in bone mass below the normal. Id. at 1369.



AO72A
(Rev. 8/82)

Allergy and medication information dated March 18, 2008, from Mountain Home Christian Clinic, indicated that Plaintiff's current medications were Advair and Proventil, that Plaintiff smoked two packs of cigarettes per day for 40 years, and that he consumed alcohol daily. (Tr. 189-190).

On September 26, 2008, Baxter Regional Medical Center conducted pulmonary tests on Plaintiff. (Tr. 207-231). The technician reported that effort and cooperation were poor, and that Plaintiff smelled strongly of alcohol. (Tr. 207). She also noted that Plaintiff had very irregular and erratic breathing. Tests revealed mild obstructive pulmonary impairment and possible restrictive ventilatory defect. (Tr. 208).

On September 30, 2008, a Physical RFC Assessment was completed by non-examining consultant David L. Hicks. (Tr. 191-198). Dr. Hicks found that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 192). Dr. Hicks found no postural, manipulative, visual, or communicative limitations were established, and that Plaintiff should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 193-195). Dr. Hicks concluded that Plaintiff's "ADLs" were limited, and that his RFC is "light with avoidance of even moderate exposure to dust and fumes." (Tr. 198).

On October 28, 2008, a Case Analysis was completed by Bill F. Payne, wherein he stated that he reviewed all the evidence in the file and affirmed the assessment dated September 30,



AO72A
(Rev. 8/82)

2008, as written. (Tr. 234).

On May 7, 2009, a Neuropsychological Evaluation was conducted by Dr. Vann Smith. (Tr. 236-239). In the report, Dr. Smith noted that Plaintiff consumed four to five alcoholic beverages per day and smoked "less than one pack" of cigarettes per day. (Tr. 236). Dr. Smith diagnosed Plaintiff with cognitive dysfunction, non-psychotic, secondary to general medical condition (294.9); CAD (coronary artery disease), per patient history; DDD (degenerative disc disease), per patient history; DJD (degenerative joint disease), per patient history; and chronic, multifocal, non-pyschogenic, poorly controlled, pain disorder. (Tr. 239). Also on May 7, 2009, Dr. Smith completed a Mental RFC questionnaire provided by Plaintiff's attorney, where he diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | 294.9 (Cognitive Disorder NOS) |
| Axis II: | none |
| Axis III: | COD; DJD; DDD; chronic pain d/o |
| Axis IV: | Chronic (unintelligible) |
| Axis V: | Current GAF - 30-35 |
| | Highest GAF previously - 80 |

(Tr. 240).

In a September 15, 2008 report relating to "Pain and Other Symptoms," Plaintiff reported that he could not breathe well, that coughing spells interfered with his sleep, that his pain was located in his chest and lungs and lasted until he could get some air, that he had pain walking any time or trying to move too much, and that he could stand/walk about 50 yards. (Tr. 140). With respect to sitting, Plaintiff reported that it did not apply. He reported that he was taking Proventil when necessary and Advair twice daily, and that there were no side effects. (Tr. 141).

In a Function Report - Adult, dated September 15, 2008, Plaintiff reported that on a daily



AO72A
(Rev. 8/82)

basis, he showered, cooked meals, did laundry and light housework, and did some grocery shopping. (Tr. 142). He reported having no problems with personal care. (Tr. 143-44). He also said that he did light cleaning, but could not do yard work because he could not breathe well while mowing. (Tr. 145). He indicated that he went outside daily, rode in cars because he did not have a driver's license, shopped for food and clothing when he needed to and when he could get a ride. (Tr. 145). He reported spending time with others, visiting, and watching movies. (Tr. 146). He believed he could only lift 25 pounds, walk 50 yards, and reported that his hands hurt badly after extended use. (Tr. 147). He said that he finished what he started and followed written and spoken instructions very well. (Tr. 147). He also said that he got along with people "fine" and handled stress and changes in routine fairly well. (Tr. 148).

In an undated Disability Report - Adult, Plaintiff reported that he could not walk for any length of time, lost his breath easily, and could not talk too much or he would not be able to catch his breath. (Tr. 126). In another undated Disability Report - Appeal, Plaintiff reported that it was becoming increasingly difficult to perform tasks that involved much movement, like walking more than 100 feet without resting, and that his breathing had become much more labored. (Tr. 164).

At the hearing held on November 20, 2009, Plaintiff reported that he was still smoking occasionally - perhaps a couple of cigarettes a day - and that he was smoking three packs a day at one point - when he was in his 20s and 30s. (Tr. 26). He reported cutting down to just smoking a couple a day in March or April of 2009. (Tr. 26). He testified that he was still drinking on a regular basis, but not to excess. (Tr. 27). He reported that he stopped doing that over a year ago, and was now drinking three times a week, maybe a six-pack. (Tr. 27). He

testified that he started having trouble with his lungs about ten or eleven years previously, and was diagnosed with emphysema and COPD. (Tr. 27-28). He stated that he had not gone to any other doctors besides the Christian Clinic and Baxter Regional, because he could not afford to go to the doctor. (Tr. 28). He further stated that he had not gone back to the Christian Clinic, even though they did not charge a fee, because he did not drive, and that it was very difficult for him to get a ride. (Tr. 28). However, his friend, Laura Ann Grass, who testified at the hearing, stated that she took him from one place to another, and that he had not asked her to take him to the Christian Clinic. (Tr. 41). Ms. Grass testified that she had been friends with Plaintiff for the past few years, and saw him about once a week, and helped him get things done. (Tr. 41). She stated that his breathing was really bad, and that he coughed constantly. She also testified that he was still smoking, and that in a space of about two to three hours while she was there, he smoked one or two cigarettes. (Tr. 42). Plaintiff reported he was still taking Albuterol and that he had to use an inhaler, which was prescribed by the Christian Clinic. (Tr. 30). He testified that he was not using any other medication, and that he had a prescription for Advair and Albuterol from Baxter Regional, but he could not afford to get it filled. (Tr. 30). He stated that he had asked his friends for money to fill his prescriptions. (Tr. 31). When asked by his attorney whether he realized that he was killing himself by smoking, Plaintiff responded "Yes." (Tr. 32).

Plaintiff also testified that his hands were numb and that he mentioned it to the doctor at the Christian Clinic, and was told he was probably having poor circulation. (Tr. 34). He stated that he did not have trouble with depression, memory, or short-term memory or focus. (Tr. 35). He did have trouble with extremes of temperature, especially with the heat and humidity. (Tr. 35). He also testified that he had problems with balance and vertigo, and that his feet and



AO72A
(Rev. 8/82)

legs went numb after sitting too long. (Tr. 38). He stated that he could sit for half an hour before having to get up and move around, and that if he stood for too long, his feet started tingling and his back started to bother him. (Tr. 39). He reported that he could lift 25 pounds if he did not have to do it frequently, and that he could not sit and use his hands at an assembly line because his hands hurt and his joints were swollen. (Tr. 39).

**III. Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A),



AO72A
(Rev. 8/82)

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**IV. Discussion:**

Plaintiff's counsel argues that the ALJ erred in failing to develop the record regarding Plaintiff's complaints of low back pain, vertigo, and hand pain and numbness by failing to even discuss these alleged impairments and not sending Plaintiff for a consultative neurological and orthopedic examination. (Doc. 7 at p. 10). Plaintiff's counsel also argues that the ALJ erred in her RFC determination due to her failure to develop the record regarding Plaintiff's low back pain, vertigo, and hand pain and numbness. (Doc. 7 at 12). Finally, Plaintiff's counsel argues



AO72A
(Rev. 8/82)

that the ALJ's decision is not supported by substantial evidence. (Doc. 7 at 14).

**A. Failure to Develop the Record:**

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary, and only if the available evidence does not provide an adequate basis for determining the merits of a disability claim. See 20 C.F.R. § 303.1512; Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

In the present case, Plaintiff complained of sore and painful joints and arthritis on January 3, 2008, to the Mountain Home Christian Clinic, but there was no diagnosis relating to such. Additionally, even though a radiology report indicated that there were degenerative changes of the spine and diffuse osteopenia, no further x-rays were ordered, and Dr. Hicks had the benefit of the radiology report when he completed his Physical RFC Assessment. There are no other medical records indicating that Plaintiff complained to any physician regarding low back pain, vertigo, and hand pain and numbness. In addition, the only condition Plaintiff listed in the Disability Report - Adult, was COPD, which is significant. See Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001)(the fact that claimant did not allege depression in her application for disability benefits is significant, even if the evidence of depression was later developed). It

would appear to the Court that Plaintiff's counsel is asking the ALJ to substitute as Plaintiff's counsel, and requesting additional examinations when Plaintiff himself should have obtained medical evidence to support his burden. The Court finds that the ALJ did not fail to fully develop the record.

**B. Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his COPD was disabling prior to the expiration of his insured status, the evidence of record does not support this conclusion.

The ALJ found that any pain and discomfort suffered by the Plaintiff would not preclude the performance of a reduced range of light work with limitations, and that Plaintiff's subjective allegations and complaints with regard to pain and other matters were inconsistent in many respects and were therefore found not credible to the extent alleged. She also found that they

were not fully supported by other evidence of record. The ALJ noted that although Plaintiff had severe breathing problems, he did not seek medical treatment (except for one visit to the emergency room) since January 2008, and used his inhaler medication only about twice a week. Although Plaintiff stated that he did not visit the Mountain Home Christian Clinic more often because he did not have transportation, his friend, Laura Ann Grass, testified that Plaintiff never asked her for a ride to the clinic. Economic justifications for lack of treatment can be relevant to a disability determination. Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992). While it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a prescribed course of treatment, or to seek medical attention, such failure may be excused by a claimant's lack of funds. Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir. 1984); Jackson v. Bowen, 866 F. 2d 274, 275 (8th Cir. 1989). Although Plaintiff did visit the free clinic on two occasions in 2008, his excuse that he did not return to the clinic because he could not find a ride is not credible, in light of Ms. Grass' testimony. "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000). Therefore, Plaintiff's failure to seek regular treatment or additional medication for his COPD is inconsistent with complaints of severe disabling COPD. See Comstrock v. Chater, 91 F.3d 1143, 1147(8th Cir. 1996).

In addition, the ALJ noted that although Plaintiff was advised to quit smoking and drinking alcohol, as of May 2, 2009, the date of Dr. Smith's evaluation, Plaintiff was still consuming four to five alcoholic beverages per day and smoking "less than one pack." Plaintiff testified on November 20, 2009, that he was only smoking one or two cigarettes per day.



AO72A
(Rev. 8/82)

However, his friend testified that during the two or three hours she was with him on a given day, he would smoke "one or two cigarettes, tops." The ALJ was allowed to consider Plaintiff's failure to stop smoking when making her credibility determination in this case. See Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008). It is also worth noting that when Plaintiff underwent consultative pulmonary function studies, it was reported that his effort and cooperation were poor and that he smelled strongly of alcohol.

With respect to Dr. Vann Smith's findings, Dr. Smith found Plaintiff to suffer from cognitive dysfunction, non-psychotic, secondary to general medical condition. The ALJ discussed Vann Smith's neuropsychological evaluation at length, specifically discounted his report, and found Plaintiff did not have a mental impairment. Courts have affirmed decisions in which one-time examination reports from Dr. Vann Smith were accorded little weight. See Hudson v. Barnhart, 2005 WL 1560249, *1 (8th Cir. Jul. 6, 2005)("The ALJ gave good reasons for his resolution of the conflict between the mental RFC opinion of Dr. Smith versus those of consulting psychologist Paul Iles and the agency reviewing psychologists"). In Clement v. Barnhart, 2006 WL 1736629 (8th Cir. June 26, 2006), the Eighth Circuit concluded that the ALJ properly discounted the RFC assessment in Dr. Smith's report "after finding it was not supported by his own testing and evaluation, or by other medical evidence in the record, and was inconsistent with Clement's reported daily activities." Id. at *1. District Courts in the Western District of Arkansas have affirmed the ALJ decisions which accorded little weight to Dr. Vann Smith's opinions. See Cole v. Astrue, 2009 WL 3158209, *8 (W.D.Ark. Sept. 29, 2009)(held that Dr. Smith's opinion was inconsistent with the remaining medical evidence of record); Partee v. Astrue, 2009 WL 2987398, *1 (W.D. Ark. Sept. 14, 2009)(held that the ALJ clearly

recited the evidence of record and why he gave more weight to the findings of Dr. Bunting over that of Dr. Smith); Haarstad v. Astrue, 2009 WL 2324711, *5 (W.D. Ark. July 27, 2009). The court in Cole also found that the ALJ was not biased against Dr. Smith, but merely pointed out the "inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record." 2009 WL 3158209 at *8, n.1. The undersigned is of the opinion that this is exactly what the ALJ did in the present case.

The ALJ also considered the letters included in the record from three different individuals: Lacey Campbell, one of Plaintiff's former supervisors, Bill Faulker, and Carrie Ann Ronna. Each individual had known Plaintiff for some time, and they all corroborated the fact that Plaintiff suffered with coughing attacks, a decline in his ability to use his hands, that his breathing was getting worse, and that he had to pause and catch his "breath" just getting the mail. One of them also stated that Plaintiff mentioned suffering from vertigo, back and neck pain, and joint pain, especially in his hands. The ALJ concluded that these individuals were not medically trained to make exacting observations as to dates, frequencies, and types and degrees of medical signs and symptoms, and that the accuracy of their reports was questionable. She found that significant weight could not be given to their statements because they were not consistent with the medical evidence of record as a whole. The Court agrees. For the reasons stated above, the Court believes there is substantial evidence to support the ALJ's credibility findings.

**C. RFC Assessment**:

The Court next turns to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating



AO72A
(Rev. 8/82)

physicians and others, and the claimant's own description of his limitations. Guilliams, 393 F.3d at 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessment of the non-examining agency medical consultant, Plaintiff's subjective complaints, and his limited medical records when she determined Plaintiff could perform light work with limitations. The ALJ noted that Plaintiff lived independently and that there was no indication that Plaintiff had any difficulties with activities of daily living or with social functioning. Plaintiff reported that he had no problems with personal care, showered, cooked meals, did the laundry, light housework, and did some grocery shopping. He went outside daily, read, watched television and movies, spent time with others as often as was available, could lift 25 pounds, and walk 50 yards. Although he reported that his hands hurt after extended use, he reported that he finished what he started and followed written and spoken instructions very well.

The Court notes that the ALJ found that Plaintiff had the RFC to perform light work, except that he must have no more than moderate exposure to airborne irritants, including but not limited to dust, fumes, gases and odors. She also found that he must avoid exposure to extremes

of temperature and humidity. In fact, the evidence supports a RFC finding that Plaintiff could perform light work, except that he must avoid "even moderate exposure to fumes, odors, dusts, gases, and poor ventilation" as found by Dr. Hicks. Accordingly, the Court is of the opinion that the ALJ should have found Plaintiff had a more limited RFC than she did with regard to the environmental limitations. However, as will be discussed more fully below, the more limited RFC finding would nevertheless support a finding that Plaintiff would be able to perform his past relevant work as a cashier. Accordingly, the Court finds the ALJ's error in this regard was harmless. See England v. Astrue, 490 F.3d 1017, 1024 (8th Cir. 2007)(hypothetical question understated limitations, but it was harmless since the VE testified that even with the additional limitations, claimant could perform jobs available in the economy).

**D. Hypothetical Proposed to Vocational Expert:**

In her hypothetical question to the VE, the ALJ asked the VE:

> Q: All right. If you will please consider an RFC for an individual capable of the full range of light work, with no more than moderate exposure to airborne irritants, gases, fumes, dusts or, including but not limited to, gases, fumes, dusts, odors, and no exposure to extremes of temperatures or humidity. With that RFC, would the claimant be able to perform any of his past work, either as performed or as generally performed in the national economy?

In response, the VE stated "The prep cook, the, well, the cashier part, ..." The ALJ then inquired as to whether, if they further limited the claimant to unskilled work, and assuming a hypothetical claimant with the same vocational profile and RFC, there would be any unskilled occupations such an individual could perform. The VE responded with the cashier position, cashier II position, fast food worker, and eviscerator.

In the Physical RFC Assessment, Dr. Hicks indicated that Plaintiff should avoid "even

moderate exposure to fumes, odors, dusts, gases, and poor ventilation." However, in the ALJ's hypothetical, she limited the claimant to "no more than moderate exposure to airborne irritants, gases, fumes, dusts, odors, and no exposure to extremes of temperatures or humidity." A review of the requirements of the prep cook, cashier, and cashier II positions reveals that the prep cook involved frequent extreme heat. Dictionary of Occupational Titles 313.374-014. However, neither the cashier or cashier II positions require any exposure to airborne irritants, gases, fumes, dusts, odors, or extreme heat or cold. Id. at 211.462-010; 211.462-014. Therefore, even though the ALJ incorrectly set forth the appropriate RFC limitations as supported by the evidence, there is nevertheless substantial evidence to support the ALJ's finding that Plaintiff would be able to perform his past relevant work as cashier.

**V. Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of January, 2012.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)